## WHIPPLE *v.* TUXWORTH.

Opinion delivered January 7, 1907.

1. CORPORATION DE FACTO—POWERS.—A corporation *de facto* may sue and be sued, and, as a rule, may do whatever a corporation *de jure* can do, and no one but the State can call its existence in question. (Page 399.)

2. SAME—REQUISITES.—To constitute a corporation *de facto,* there are three requisites: (1) a charter or general law under which such a corporation might lawfully be organized; (2) an attempt to organize thereunder; and (3) actual user of the corporate franchise. (Page 400.)

3. CORPORATION—IMPROVEMENT DISTRICT.—Improvement districts organized by city and town councils, which are given a particular name, are endowed with perpetual succession until their object is accomplished, and are impowered to make contracts, incur debts, issue bonds, collect assessments, and sue and be sued, are in effect corporations, though they are not denominated such. (Page 402.)

4. DECREE—PRESUMPTION.—A decree enforcing a lien in favor of a *de facto* improvement district upon property in the district raises a presumption that the district was legally organized. (Page 403.)

5. DE FACTO IMPROVEMENT DISTRICT—WAIVER OF DEFENSE.—Where a *de facto* improvement district recovered a decree enforcing a lien on property within the district, the defense that the district was not legally organized was waived where it was not made in such proceeding, and can not be set up in a subsequent suit. (Page 405.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; reversed.

*William G. Whipple,* for appellant

The suit by the board of improvement to sell the land for unpaid taxes was one *in rem.* 50 Ark. 188; 55 *Id.* 398. The Code provisions as to persons constructively summoned do not apply in a suit against land for taxes. 57 Ark. 49. When the jurisdiction of a court of general jurisdiction depends upon facts not appearing upon the record, they will be presumed in a collateral proceding. 64 Ark. 464. A court of general jurisdiction is presumed to have had jurisdiction of the parties as well as the subject-matter. 12 Ia. 204; 39 *Id.* 539. Where taxes are sought to be collected against land, notice by publication is sufficient to bind all owners, because the proceeding is *in rem.* 193 U. S. 92. The decree of such a court that it had jurisdiction of the person can not be inquired into except upon appeal. 11 Ark. 519.

Judgments by default are as effective and binding as though rendered after the trial of the issues. Freeman on Judgments, secs. 330 and 532. A judgment *in rem* binds only the property within the control of the court which renders it. 139 U. S. 156; 34 Ark. 291; 57 *Id.* 97; *Id.* 227; 50 *Id.* 551; 71 *Id.* 599; 60 *Id.* 369. Complainant can not go into evidence at large to establish error in the decree. 13 Pet. 6. One losing a suit by his own neglect can not be aided by bill of review. 1 S. C. 232. Inadequacy of price cuts no figure in tax sale. Cooley on Taxation, p. 345.

*John B. Jones, E. B. Kinsworthy* and *G. D. Henderson,* for appellee.

Want of jurisdiction can always be set up against a judgment when sought to be enforced. 48 Ark. 156. If land has been actually sold and conveyed for a tax, the original owner remaining in possession may have the validity tested by a bill in equity filed for the purpose of quieting his title. Cooley on Taxation, vol. 2, 1457. A void judgment or decree is a mere nullity, and has no force either as evidence or by way of estoppel. 60 Ark. 369.

BATTLE, J. Frank Tuxworth filed a complaint against Du-

rand Whipple, in the Pulaski Chancery Court, on the 13th day of September, 1904. He alleged in his complaint that he was the owner of lot No. 14 in block No. 17 in Fleming & Bradford's Addition, in the city of Little Rock; that it is vacant and unimproved; that he was a non-resident of this State; that suit was brought in the Pulaski Chancery Court in July, 1902, by the alleged Improvement District No. 60 against the unknown owners of the lot for assessment charges against the same for the years 1899, 1900 and 1901, amounting in the aggregate to $9.72; that plaintiff was not served with process, and had no knowledge of the suit until April, 1904; that there was no Improvement District No. 60, but attorneys for the so-called district falsely represented to the court that there was such a district, and that the assessments were due, and on these representations the court, on the first of October, 1902, rendered a decree, ordering the lot to be sold; that the suit in which this decree was rendered was numbered 7752; that on the 3d day of November, 1902, the lot was sold by a commissioner of the court to the defendant for the assessments and costs; that on the 15th day of January, 1904, the commissioner executed a deed to the defendant. He asked that the decree, sale, and deed be set aside and declared void.

Afterwards plaintiff filed an amendment to his complaint in which he stated there was no such district as Improvement District No. 60; that ten resident owners of property within the boundaries of the alleged district never signed a petition to the city council of Little Rock to take steps towards making the improvement district according to section 5665 of Kirby's Digest, and the city council had no jurisdiction to pass an ordinance establishing such district. That the ordinance, the acts of the persons named as commissioners, and the assessments were void and of no effect. That the decree rendered by the court was void for four reasons:

"(1). There was no such plaintiff in existence as Improvement District No. 60 at the time of the commencement of said cause No. 7752; that, there being no plaintiff, there was no cause of action before the court to be adjudged, and that the complaint filed in said cause was not a pleading in any cause

in said court for adjudication; and the court had no power to take any steps to adjudicate such cause.

"(2). The court had no jurisdiction over the subject-matter of said complaint for the reason said lot was not situated within any improvement district; that the court by law had authority only to decree sale of land situated within an improvement district to satisfy assessments for improvement of property.

"(3). That plaintiff was not a party to said cause No 7752, and had no notice of said cause or pretended decree until April, 1904; that the allegations that the owner of said property was unknown were untrue; that the parties pretending to be commissioners had notice of facts from which they could easily have found plaintiff was the owner.

"(4). That the decree and sale of said lot without jurisdiction in the court to render the same in cause No. 7752 deprived plaintiff of the property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States, and the decree and sale are therefore void."

The defendant answered, and stated that the plaintiff did not pay the assessments on the lot in controversy for the years 1899, 1900 and 1901; and that Improvement District No. 60 has always been a *de facto* improvement district from the date of its organization in May, 1892, and that it was recognized by the plaintiff and predecessors in title by the repeated payment from year to year of assessments levied on said lot by the board of improvement of said district; that in the case of the board of improvement of said district against the unknown owners of lot 12, 13 and 14, block 8, in said district, this court rendered a decree on December 26, 1893, sustaining the legality of the organization of said district, although in that case its legality was vigorously contested; that since said adjudication some three hundred suits have been brought in this court (chancery) by said board of improvement of said district against delinquent owners of lots in said district, and successfully maintained; that a large amount has been expended by said board in said district in improving the streets and building bridges therein; that the allegations made in said complaint in suit No. 7752 were neither false nor fraudulent, and defendant alleges that the statements therein made are true; that said lot 14, block

17, in said Fleming & Bradford's Addition in said district was delinquent for the assessments for the years 1899, 1900 and 1901, for the amounts set forth in said complaint, and that the said lot is within the boundaries of said district; that the statements made in said complaint to the effect that no notice was served upon the unknown owners of said lot in said suit are untrue; that the said owners were .duly and fully notified as required by law, in every particular, of the bringing of said suit; that the process was regular, and that the said complaint contained the averment that the owners of said lot were unknown, as required by section 5346 of the Digest; that the summons was duly posted on the lot, and was duly published in the proper newspaper, for the proper period; that the proper proof was duly made and filed in said court, showing the same; that the attorneys for the said board in said suit did not make any false representations to the court, as alleged in said complaint. Defendant admits the bringing of the suit in said case, numbered 7752, the decree therein, the advertisement, and the sale by the commissioners of this court (chancery), and the execution of the deed to defendant as alleged in said complaint. Defendant alleges that full proof was duly made to the court of all the steps required for constructive service in said case, as required by law, as is shown by the records and files of the court; that it was the duty of said plaintiff, as a provident owner, to have known of all these steps in said suit, especially *since many assessments had previously been made upon said lot, and paid from year to year, either by the plaintiff or by some one acting in his behalf, from which it follows that he was charged with notice that the annual assessments would probably continue;* that it is not true that when defendant purchased said lot he knew that said district had no legal existence, and that the said decree was void; that said decree is valid and binding, and said deed is a legal and valid deed." ·

The defendant also answered the amendment to the complaint, and alleged that the improvement district in question was a *de facto* district, and the board of improvement a *de facto* board, at the time of the rendition of the decree; that the lot involved was within the territorial boundaries of the district, which was known as "Street Grading District No. 60," of the

city. of Little Rock; that all persons interested in the lot were parties to the suit, it being *in rem;* that the plaintiff had constructive notice of the bringing of the suit; and that the allegation in the complaint in suit numbered 7752 that the owners of the lot were unknown was true in fact, as neither the complainants nor their agents or attorneys had any knowledge as to who the owners were at the time the decree was rendered, and had no available means of knowing who they were.

The cause was heard, in part, on the following agreed statement of facts:

"First. That the plaintiff holds title to the lot claimed in this case by him by and through the title as set forth in the complaint, except as the same may be affected by deed therein mentioned as held by the defendant.

"Second. That all exhibits to plaintiff's complaint are true copies of the records, and are admitted as evidence if properly certified to by the proper officer.

"Third. That plaintiff was a nonresident when said suit 7752, mentioned in plaintiff's complaint, was brought, and has been ever since, and is now, a non-resident of this State.

"Fourth. That plaintiff was never personally served with notice of said suit No. 7752, and never entered his appearance therein, and that the only notice given of said suit was such a notice is shown by the papers therein, with returns thereon, which are admitted in evidence in this case.

"Fifth. That the plaintiff had no personal knowledge that suit No. 7752 had been brought, or that the lot claimed by him had been sold under the decree in said case, or that the defendant had purchased the same until April, 1904, after the terms of this court (chancery) at which said decree was rendered, said sale made and said deed executed to defendant had expired.

"Sixth. That said suit No. 7752 was a suit against the unknown owner of certain lots, including the lot claimed by plaintiff, and that plaintiff had no personal notice of any kind of said suit until April, 1904.

"Seventh. That the decree in said suit No. 7752, under which the lot claimed by plaintiff was sold to defendant, was taken without the introduction of proof except as to such service as is shown by the papers with the returns thereon, and

the complaint and other papers in said case; and that there was no issue joined and tried in said case as to whether or not there was such a thing as Improvement District No. 60, or as to whether or not there were any taxes, assessments or penalties due to said district on the lot claimed by plaintiff; that the decree in said case was a default decree given on the complaint therein and such service as is shown by the papers therein.

"Eighth. That plaintiff has regularly paid all taxes due on said lot claimed by him since he has owned the same, except that claimed by said alleged Improvement District No. 60.

"Ninth. That it is admitted that no petition signed by ten resident owners of real property within the territory embraced in said alleged Improvement District No. 60 was ever presented to the city council of Little Rock, Arkansas, asking that said district be established, as required by section 5322 of Sandels & Hill's Digest, and that said District No. 60 was never legally created.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Eleventh. That when the lot claimed by plaintiff was sold under decree in case No. 7752, the defendant purchased it and said lots 12 and 13, in the same block, for $28.12, and that each of said lots was worth at the time he purchased same, and is now worth, $400.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Fourteenth. That the plaintiff would testify that he did not know that there was claimed to be such a thing as said alleged Improvement District No. 60 until April, 1904, and that he never knowingly paid any taxes or assessments to said district on lot 14, and the same is admitted as the evidence of plaintiff in this case, as if properly taken and filed herein to that effect; but it is admitted that the assessments on said lot claimed by said alleged Improvement District No. 60, prior to those for the year 1899, were paid by some one.

"Fifteenth. It is also further agreed that said suit No. 7752 was brought for assessments claimed to be due on said lot to said improvement district and unpaid; that the decree therein was rendered upon default of any answer or demurrer, and the said lot was sold in the usual manner to the defendant by the commissioner appointed by this court therefor, and was sold after due advertisement, at the time and place described therein, at

public sale to the highest bidder for cash; and that the defendant paid the purchase money therefor to said commissioner in cash, and a certificate of sale therefor was executed and delivered by said commissioner to this defendant in the usual manner as directed by statute; and that at the expiration of the period of redemption from sale of one year, no redemption having been made from said sale, the said commissioner executed and delivered to this defendant a deed to said lot, in pursuance of said decree, and as ordered by the said court; and that said decree has never been appealed from, reversed, set aside or modified, and has whatever force and effect it had when first rendered.

"Sixteenth. It is also agreed that what was supposed to be Improvement District No. 60 collected assessments on property therein from May, 1892, until the decision of the case of *Board of Improvement District No. 60 v. Cotter,* 71 Ark. 556, and that those in charge of same, from time to time during said time, expended considerable sums of money in improving the streets and erecting bridges over a creek within the territory embraced by said alleged district. It is also agreed that during said time there were several suits in this court (chancery), including one in which the legality of said district was directly attacked and involved, in which this court (chancery) held the organization of said district to be legal and valid; but it is also agreed that plaintiff was not a party to any of these suits, and that none of these suits affected the property claimed by plaintiff, and that he had no notice of same."

It was shown by competent testimony that notice of the institution of suit numbered 7752 was given to the defendants by publication as required by statute in suits against unknown owners.

The court rendered a decree in this cause in which it found that "Frank Tuxworth, the plaintiff, is the owner of said lot 14; that the plaintiff is and was when the suit was commenced a non-resident; that the suit was brought by an alleged improvement district; that there was no service on the plaintiff other than that mentioned in section 5696 of Kirby's Digest; that plaintiff had no actual notice of the pendency of the suit; that a decree was rendered against said lot for assessments claimed to be due said district for the sum claimed in said suit; that the plaintiff did not

enter his appearance in said suit; that the decree was by default. and ordered said lot to be sold for said assessments, penalty and costs; that at said sale defendant Whipple purchased for the amount decreed against said lot; that the plaintiff did not redeem from said sale, having no actual notice of the sale; that the sale was approved and deed executed to said purchaser of said lot; that there was no Improvement District No. 60, such as above described, and such pretended district was void and of no legal effect whatever, for the reasons alleged in the complaint and shown by the agreement of facts; that all proceedings under said decree were void; that said deed is a cloud upon the title of plaintiff. It therefore orders and adjudges that the decree in said No. 7752, and the said sale thereunder, be and the same are declared void, and that said deed is void and held for naught."

The decree in the suit numbered 7752 is attacked upon the ground that the alleged improvement district in that case was not legally organized in every important particular. That was not necessary. A corporation *de facto* can sue and be sued, and, as a rule, do whatever a corporation *de jure* can do, and none but the State can call its existence in question. *Tulare Irrigation District* v. *Shepard,* 185 U. S. 1; *Searcy* v. *Yarnell,* 47 Ark. 269; *West* v. *Carolina Life Insurance Co.,* 31 Ark. 476; *Mississippi, etc., R. Co.* v. *Cross,* 20 Ark. 443; *Hammett* v. *Little Rock, etc., R. Co.,* 20 Ark. 204; 10 Cyclopedia of Law and Procedure, 256, and cases cited.

The rule, as stated by Judge Cooley in his work on Constitutional Limitations (6 Ed.), on page 309, is as follows: "In proceedings where the question whether a corporation exists or not arises collaterally, the courts will not permit its corporate character to be questioned, if it appear to be acting under *color of law,* and recognized by the State as such. * * * And the rule, we apprehend, would be no different if the Constitution itself prescribed the manner of incorporation. Even in such a case proof that the corporation was acting as such, under legislative action, would be sufficient evidence of right, except as against the State, and private parties could not enter upon any question of regularity. And the State itself may justly be precluded, on principles of estoppel, from raising any such objection, where there has been long acquiescence and recognition."

The requisites to constitute a corporation *de facto* are three: (1) a charter or general law under which such a corporation as it purports to be might lawfully be organized; (2) an attempt to organize thereunder; and (3) actual user of the corporate franchise. *Tulare Irrigation District* v. *Shepard,* 185 U. S. 1.

In Clark on Corporations, on page 90, it is said: "Most of the courts hold that there is a corporation *de facto* whenever there is a valid law under which a particular kind of a corporation may lawfully be organized, and persons having the required qualifications undertake, in good faith, to organize such a corporation thereunder, comply at least *colorably* with the law, and afterwards assume to act as a corporation, though particular provisions of the law are not complied with. And they hold that it is altogether immaterial in such case whether compliance with the particular provisions was intended by the Legislature as a condition precedent to the formation of the corporation or not." See cases cited.

Again, in the same book, on page 94, it is said: "There are some cases that hold, and some that seem to hold, that there can not be even a *de facto* corporation unless the corporators have substantially complied with all the conditions precedent prescribed by the statute; that, without such compliance, the pretended corporation does not come into existence for any purpose; and that, in the absense of elements of estoppel, the objection may be raised by a private individual as well as by the State, and collaterally as well as directly. These cases, however, are contrary to the great weight of authority, and some of them are not easily reconciled with other decisions of the same court. To constitute a corporation *de facto,* there must, it is true, be colorable compliance with the statute, but there need not be more. There need not be a substantial compliance. A substantial compliance makes the body a corporation *de jure.*"

In *Finnegan* v. *Noerenberg,* 52 Minn. 239, it is said: "Color of apparent organization under some charter or enabling act does not mean that there shall have been a full compliance with what the law requires to be done, nor a substantial compliance. A substantial compliance will make a corporation *de jure.* But there must be an apparent attempt to perfect an organization under the law. There being such apparent attempt to

perfect an organization, the failure as to some substantial require-
ment will prevent the body being a corporation *de jure;* but if
there be user pursuant to such attempted organization, it will not
prevent it being a corporation *de facto."    Stout* v. *Zulick,* 48
N. J. L. 599; *Eaton* v. *Walker,* 76 Mich. 579.

In *Swartwout* v. *Michigan Air Line Railroad Co.,* 24 Mich.
393, Judge Cooley, in delivering the opinion of the court, said:
"It is obvious that all questions of regularity in the proceedings
on the part of the associates in taking upon themselves corporate
functions purporting to emanate from the sovereignty are ques-
tions which concern the State, rather than individuals, and should
only be raised in a proceeding to which the State has seen fit
to make itself a party.    The trial of an issue, on a complaint by
the State, of usurpation would determine the matter finally, but
the trial of the same issue in a suit with an individual would settle
nothing for future controversies, but the same question might
arise again and again, and perhaps be decided differently on
different trials.    This point would have been open to no contro-
versy whatever, had the plaintiff been organized under a special
charter, and had we had no constitutional provisions forbidding
the granting of such charters.    Proof of charter and of user
under it would have been sufficient to establish a *prima facie* right
in the plaintiff to sue. *   *   *   * And this *prima facie* case an in-
dividual would not be suffered to dispute, for the reason already
suggested, that the question is not to be tried in a suit where it
would only arise collaterally, and where the State, as the party
chiefly concerned, could not be heard by its counsel. *   *   *
But both in reason and on authority the ruling should be the same
where an attempt has been made to organize a corporation under
a general law premitting it."    *McFarlan* v. *Triton Insurance Co.,*
4 Denio, 392; *Spring Valley Water Works* v. *San Francisco,* 22
Cal. 434; *Mackall* v. *Chesapeake & Ohio Canal Co.,* 94 U. S.
308; 3 Cook on Corporations (4 Ed.), § 637.

In *Dean* v. *Davis,* 51 Cal. 406, it was held that "an act of the
Legislature which requires the supervisors of a county, upon the
petition of persons in the possession of more than one half of
the acres of any specified portion of the county, to erect such spec-
ified portion into a levee district for the purpose of reclaiming the
same from overflow, and then provides the details by which the

reclamation shall be effected, makes a levee district organized by the board of supervisors a corporation, and a public corporation, even if the act does not in terms declare it a corporation." The court said: "In authorizing the district to be organized under a particular name, and endowing it with so many of the powers of a natural person, and particularly with the power to make contracts, incur debts, issue bonds, levy and collect assessments, and have perpetual succession, it would appear to be manifest that the intention was to endow it with corporate rights." *People* v. *Reclamation Dist.,* 53 Cal. 348; *People* v. *Williams,* 56 Cal. 647; *Hoke* v. *Perdue,* 62 Cal. 546; *People* v. *La Rue,* 67 Cal. 528.

In the same case the court held that "in such case, if the petition to the board of supervisors appears on its face to be signed by persons owning a majority of acres, and the district is in fact exercising corporate powers, the validity of its corporate existence can be tested only by proceedings in behalf of the people, and it can not be shown in a collateral action that persons owning a majority of acres did not sign the petition, and that the charter was therefore procured through fraud."

Irrigation districts organized by boards of supervisors upon the same plan as districts for reclamation of lands in *Dean* v. *Davis, supra,* with similar general powers in many respects, were held to be corporations. *Central Irrigation District* v. *De Lappe,* 79 Cal. 351; In re *Madera Irrigation District,* 92 Cal. 296; *Quint* v. *Hoffman,* 103 Cal. 506.

Improvement districts in this State are organized by the city councils of cities and towns under a valid law. They are given a particular name, and endowed with perpetual succession until their object is accomplished, with power to make contracts, incur debts, issue bonds, collect assessments, to sue, and to compel the city council by mandamus to make assessments. *Morrilton Waterworks Improvement District* v. *Earl,* 71 Ark. 4; *Lenon* v. *Brodie, ante* p. 208. The effect of the statutes is to make them corporations, though they are not denominated such.

The sections of Kirby's Digest which empower city councils to organize improvement districts in this State are as follows:

"Section 5665. When any ten resident owners of real property in any such city or incorporated town, or of any portion thereof, shall petition the city or town council to take steps to-

ward the making of any such local improvement, it shall be the duty of the council to at once lay off the whole city or town, if the whole of the desired improvement be general and local in its nature to said city or town, or the portion thereof mentioned in the petition, if it be limited to a part of said city or town only, into one or more improvement districts, designating the boundaries of such district so that it may be easily distinguished; and each district, if more than one, shall be designated by number and by the object of the proposed improvement.

"Section 5666. Within twenty days after the designation of such district or districts the clerk of said city or town shall publish the ordinance of the council establishing the district in some newspaper published in said city or town, for one insertion.

"Section 5667. If within three months after the publication of any such ordinance a majority in value of the owners of real property within such district adjoining the locality to be affected shall present to the council a petition praying that such improvement be made, which petition shall designate the nature of the improvement to be undertaken, and that the cost thereof be assessed and charged upon the real property situated within such district or districts, the city council shall at once appoint three persons, owners of real property therein, who shall compose a board of improvement for the district."

The decree in suit numbered 7752 was based upon the presumption that Improvement District No. 60 was legally organized under the foregoing sections of the Digest. *Kansas City, Pittsburg & Gulf Railway Company* v. *Waterworks Improvement District No. 1,* 68 Ark. 376, 378. That presumption attends the decree until it is overcome by competent evidence, and in this case the burden to do so is upon the appellee. He attempts to do so by an admission of parties "that no petition signed by ten resident owners of real property within the territory embraced in said alleged Improvement District No. 60 was ever presented to the city council of Little Rock, Arkansas, asking that said district be established, as required by section 5322 of Sandels & Hill's Digest, and that said District No. 60 was never legally created." This does not show that ten owners of real property in the district did not sign the petition, but that there were not ten of such owners resident in the district who signed the petition, and how

much less than ten does not appear. This was the only defect in the organization of the district.

What was meant by the use of the words, "ten resident owners of real property in any city or incorporated town," whether residents of the city or town owning real property in the district proposed, or ten residents of such district owning real property therein, was a subject of much doubt, a question about which lawyers and courts differed until the opinion in *Board of Improvement District No. 60* (the district now in question) v. *Cotter,* 71 Ark. 556, was delivered. The city council of Little Rock took the former view. This court held that the latter was correct. In view of the ambiguity of the statute, the effort to organize the district is presumed to have been made in good faith. There is no reason assignable why it was not. After its organization it collected assessments on property therein from May, 1892, until the decision in *Board of Improvement District No. 60* v. *Cotter,* 71 Ark. 556, which was on the 24th of October, 1903, more than eleven years, expended considerable sums of money in improving the streets and erecting bridges over a creek within the territory embraced in the district, and brought many suits in the Pulaski Chancery Court, including one in which the legality of the district was directly attacked and involved, and the court held the organization thereof to be legal and valid. All of which and the organization were sufficient to constitute it a corporation *de facto.*

It is true that it was held in *Board of Improvement District No. 60* v. *Cotter,* 71 Ark. 556, that " the filing of the petition prescribed by section 5665, *supra,* supported by the signatures of ten resident property owners of the proposed district, was mandatory and jurisdictional;" and that "all the proceedings of the city council in the attempted establishment and operation of Improvement District No. 60 were void." But that suit was brought for the purpose of collecting certain assessments which, it was alleged, were a charge on the property of appellee. The existence of the district as a corporation *de facto* was not involved in that suit, and what is held in that case does not affect its existence as such. The failure to file the petition of ten resident owners of real property in the district was pleaded as a defense in bar of the collection of the assessment. As a corporation *de facto,* it may

·be entitled to bring an action, and still be unable to maintain it. The assessment in the Cotter case was void. It was made by the city council, and the defects which rendered it void did not affect the district as a corporation *de facto.* Its existence as such can be questioned only by the State in a proceeding instituted for that purpose.

The district as a corporation *de facto* was entitled to institute the suit numbered 7752 against the lot in question. The failure of the ten resident owners of real property to file the petition as prescribed by section 5665, *supra,* could have been set up as a defense in that suit; but, as it was not done, the effect of the decree therein was to sweep it away, and to debar it from being set up in any subsequent suit. *Roth* v. *Merchants & Planters Bank,* 70 Ark. 203; *Ellis* v. *Clarke,* 19 Ark. 421; *Bell* v. *Fergus,* 55 Ark. 538; *Davis* v. *Brown,* 94 U. S. 423.

The decree of the chancery court is reversed, and the cause is remanded with directions to the court to dismiss complaint of appellee for want of equity.