The Honorable Jay Bradford State Senator P. O. Box 8367 Pine Bluff, Arkansas 71611
Dear Senator Bradford:
This is in response to your request for an opinion regarding the status of and effect of certain actions taken by Central Business Improvement District No. 1 in the City of Pine Bluff during the pendency of an action challenging the formation of the District. You have asked the following specific questions in this regard:
 (1) During the pendency of the lawsuit, is the District presently a valid business improvement district under Arkansas statute?
 (2) Can the District enter into a binding commitment to retain legal counsel and obligate the affected property owners for payment of legal fees and costs?
 (3) Can the Pine Bluff Central Business Improvement District conduct any of the business it was formed for other than defense of the pending legal action and, in particular, can it:
 (a) fill a vacancy in the Board of Commissioners created by the death of one of the original commissioners appointed in the creating Ordinance?;
 (b) can it enter into binding agreements with parties for services to promote the purposes for which it was formed, i.e. architects, appraisers, etc.?;
 (c) can the District proceed with its general financial process to include assessments?
 (4) Can the Central Business Improvement District conduct closed meetings or is it subject to the Arkansas Freedom of Information Act? In particular, may the Board of Commissioners meet with legal counsel for the Central Business Improvement District in private to discuss the conduct of ongoing litigation?
It must be initially noted that your questions essentially turn on factual determinations to be made by the trial court. If the District was created as a result of compliance with all legal requirements, it then exists de jure, that is, by law, and its actions will be upheld. Yet a failure to strictly comply with all requirements governing formation will not necessarily invalidate all actions taken so long as the District exists as a de facto corporation.
A municipal corporation will be recognized de facto where such corporation is created "under color of delegated authority, followed by a user in good faith of the governmental powers incidental thereto, . . . whenever through failure to comply with statutory requirements the corporation cannot be said to exist de jure." 56 Am.Jur.2d Municipal Corporations 34 (1971).
The essentials of a de facto municipal corporation are often stated to be a valid statute authorizing incorporation, an organization in good faith under such statute, and an assumption of corporate powers.
Id. at 98.
The view adopted in Arkansas is substantially the same as that taken by other jurisdictions. In Whipple v. Tuxworth, 81 Ark. 39199 S.W. 86 (1907), the Supreme Court applied the doctrine of de facto corporations to a municipal improvement district. The court stated as follows:
The requisites to constitute a corporation de facto are three:
 (1) a charter or general law under which such a corporation as it purports to be might lawfully be organized; (2) an attempt to organize thereunder; and (3) actual user of the corporate franchise.
(Citations omitted). Id. at 400. In Whipple, supra, the court relied upon the de facto existence of the improvement district as a means of sustaining the district's ability to institute suit, in rem, against a resident for his failure to pay taxes assessed against his property. The court further stated that a de facto corporation "can sue and be sued, and as a rule, do whatever a corporation de jure can do. . . ." Id. at 399.
Further review of the third criteria [criterion] for de facto existence, that is, the assumption of corporate powers, is warranted in this instance. In this regard, it has been held that a de facto corporation arises where there has been use for a substantial time of the franchise or jurisdiction supposed to be acquired. Jail Co. v. Village of Croton-on-Hudson, 179 N.E. 708,709, 258 N.Y. 303 (1932). The plaintiff in Jail Co., supra, filed suit to challenge an assessment imposed on its land subsequent to an invalid annexation by defendants. In resolving the issue, the court looked to the law on de facto corporations and held:
 The plaintiff now before us contested the validity of the annexation and of the assessment laid thereunder with persistence and dispatch. The village at the time of the contest had not acquired the quality of a de facto corporation in the territory annexed, for it had not exercised its franchise there without resistance or protest for a substantial space of time.
Id. at 710. In the above case, the sequence of events evolved in the following manner. In June of 1930, the village council was petitioned for the annexation of neighboring land. The petition was then voted on and approved by a majority of the electorate. In November of the same year, an assessment was imposed upon the annexed land over the protest of the plaintiff. The plaintiff contended that the annexation was void because the requisite number of signatures had not been obtained on the initial petition, as required by law; thus, the assessment was also void. In February, 1931, plaintiff filed suit.
According to your correspondence, residents of Central Business Improvement District No. 1 of Pine Bluff filed suit within thirty (30) days of publication challenging the District's formation. On these facts, a court could find that the District does not rise to the level of a de facto corporation because sufficient time has not passed within which the corporation can be said to have assumed power. It should also be noted that A.C.A. 14-88-207 et seq. (Supp. 1987), which governs central business improvement districts sets a thirty day limitation within which suit may be brought challenging the formation of such districts. See also A.C.A. 14-184-106 (Supp. 1987).
It may be concluded from the foregoing that the answer to questions (1) through (3)(c) is yes if all legal requirements were met in forming the District. This issue is before the Court, and our longstanding policy precludes the issuance of opinions on matters currently in litigation. If the district does not exist de jure, it is my opinion that its actions will be invalidated. This conclusion is compelled by the foregoing discussion relating to whether the District can exist de facto. It is my opinion that this is unlikely due to the absence of an assumption of corporate powers for any significant period of time.
Your fourth question involves the applicability of the Arkansas Freedom of Information Act ("FOIA") which is codified as A.C.A.25-19-101 (Supp. 1987), as amended by Act 49 of 1987. A.C.A.25-19-106 (Supp. 1987) states in pertinent part as follows:
 Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts, and all boards, bureaus, commissions, or organizations, except Grand Juries, supported wholly or in part by public funds, or expending public funds, shall be public meetings.
A.C.A. 25-19-103 (Supp. 1987) defines "public meetings":
 `Public meetings' are the meetings of any bureau, commission, or agency of the State, or any political subdivision of the State, including municipalities and counties, boards of education, and all other boards, bureaus, commissions or organizations in the State of Arkansas, except grant [grand] juries, supported wholly or in part by public funds, or expending public funds.
It is my opinion that the meetings of the Central Business Improvement District clearly fall within the above FOIA provisions. The District is "supported wholly or in part by public funds" and it is involved in "expending public funds." The above provisions also in all likelihood extend to the District wherein reference is made to "all meetings . . . of the governing bodies of all municipalities. . ." (25-19-106) and "meetings of any bureau, commission, or agency of the State, or any political subdivision of the State, including municipalities. . . ." (25-19-103).
It must therefore be concluded, in response to your last question, that the District cannot conduct closed meetings, but rather is subject to the FOIA. We find no exception to the FOIA for meetings with legal counsel for the purpose of discussing ongoing litigation. It is significant to note in this regard that the Arkansas Supreme Court has rejected the argument that the attorney-client privilege, as set out in Rule 502 of the Uniform Rules of Evidence and Rule 26(b)(3) of the Arkansas Rules of Civil Procedure, provides an exception to the FOIA. See Laman v. McCord, 245 Ark. 401, 432 S.W.2d 753 (1968); Scott v. Smith,292 Ark. 174 728 S.W.2d 515 (1987). Communications between a public agency and its lawyers are, moreover, excluded from the attorney-client privilege under Rule 502(6) unless the communication concerns a pending action and the court determines that disclosure will seriously impair the agency's ability to conduct the litigation in the public interest. The Court in Scott v. Smith, supra, noted that Rule 502 is "an evidentiary rule limited to court proceedings in this state," 292 Ark. at 176, and that A.R.C.P Rule 26(b)(3) is a "procedural rule limited to discovery. Id. The Court concluded as follows:
 Neither Rule 502 nor A.R.C.P Rule 26(b)(3) specifically provides that it should have application outside of these limited areas, and we have previously held that a statute dealing with admission of evidence and discovery should not create a specific exception to the Freedom of Information Act. (Citation omitted.)
 292 Ark. at 176.
It should be noted, finally, that "executive sessions" are permitted under A.C.A. 25-19-106 (Supp. 1987) ". . . only for the purpose of considering employment, appointment, promotion, demotion, disciplining or resignation of any public officer or employee."
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.