The Honorable Olin Cook State Representative 266 South Enid Avenue Russellville, Arkansas 72801-4534
Dear Representative Cook:
This is in response to your request, on behalf of Tri County Regional Water Distribution District, for an opinion on four questions inquiring which Arkansas eminent domain laws are applicable to the actions of Tri County. Specifically, you note that Tri County is given the power of eminent domain at A.C.A. §14-116-402(10) (as retained by Act 907 of 1997). That statute states that districts such as Tri County shall "have and exercise the right of eminent domain for the purpose of acquiring rights-of-way and other properties necessary in the construction or operation of its property and business in the manner nowprovided by the condemnation laws of this state for acquiringprivate property for public use." (Emphasis added). The questions you have posed for resolution inquire which of two potentially applicable subchapters of the Arkansas Code is the appropriate one to be followed by Tri County in its exercise of the power of eminent domain. Specifically, the questions presented are as follows:
 1. Does Ark. Code Ann. § 18-15-401 et seq. apply to § 14-116-402(110)?
 2. Does Ark. Code Ann. § 18-15-601 et seq. apply to § 14-116-402(10)?
 3. If both Ark. Code Ann. § 18-15-401 et seq. and § 18-15-601 et seq. apply to § 14-116-402(10), which section controls?
 4. Does the provision of Ark. Code Ann. § 18-15-605
apply to Tri County in all events?
The questions posed by your request are not clearly answered by law, and in my opinion the issue could benefit from legislative or judicial clarification. The relevant language providing that the power of eminent domain shall be exercised "in the manner now provided by the laws of this state for acquiring private property for public use" refers broadly to eminent domain law, and does not take account of the fact that several different subchapters and procedures for the exercise of such power exist. In my opinion, however, a reading of each of these subchapters and the pertinent language of the statutes governing the creation and characteristics of nonprofit regional water distribution districts leads to the conclusion that the more appropriately applicable subchapter is A.C.A. §§18-15-601 et seq. I should note, however, because of the broad drafting of the pertinent language of A.C.A. § 14-116-402(10), that a court might, as long as constitutional safeguards are met, deem any one of several provisions governing the exercise of eminent domain to be properly applicable. Again, the issue could benefit from legislative or judicial clarification.
Public nonprofit regional water districts are authorized at A.C.A. §§ 14-116-101 to -801. Such districts, as their name implies, are "regional" and may include territory in more than one county. See
A.C.A. § 14-116-203. Such districts were originally created to take advantage of the federal government's plans to construct multipurpose reservoirs. A new type of "regional" district was authorized, as existing law did not provide for water districts of the geographic size necessary to give the requisite assurances to the federal government in the construction of these projects. See
Acts 1957, No,. 114, § 17.
This law authorizing the creation of "nonprofit regional water distribution districts" was passed in 1957 and became effective by virtue of an emergency clause on February 28, 1957. See Acts 1957, No. 114. As noted above, the law states that such districts have the right of eminent domain to be exercised "in the mannernow provided by the condemnation laws. . . ." (Emphasis added.)
The first of the two subchapters you mention as potentially applicable is A.C.A. § 18-15-401 to -410, and it provides in pertinent part that: "A municipality operating a waterworks system . . . shall have the right to acquire any property useful for municipal waterworks purposes by following the eminent domain proceedings set forth in this subchapter." The second subchapter, A.C.A. § 18-15-601 to -607, provides in pertinent part that: "All municipal corporations in this state, and all corporations, including not-for-profit corporations and water associations, which supply any town, city, or village [or rural consumers] in this state, or the inhabitants thereof with water . . . are authorized to exercise the power of eminent domain. . . ."[1]
The subchapter mentioned in the first question posed, A.C.A. §18-15-401 to -410, applying to municipalities operating a waterworks system, was also passed in 1957 and became effective by virtue of an emergency clause on March 14, 1957. See Acts 1957, No. 269. The emergency clause of this law indicates a specific purpose for its enactment, as follows:
 The General Assembly hereby finds, declares and determines that existing laws of eminent domain do not furnish sufficient authority for condemnation of lands for municipal waterworks systems; that the furnishing of an adequate supply of water to its inhabitants by a municipality is an absolute necessity; that there is municipal waterworks construction underway in this State at the present time which requires immediately the additional authority granted by this Act, without which construction of waterworks facilities will be seriously hampered and delayed. . . .
Acts 1957, No. 269, § 15.
This subchapter appears to deal exclusively with a municipality's
exercise of eminent domain in conjunction with the construction of a waterworks project. This law was passed at the same session as the 1957 law authorizing the creation of nonprofit regional water districts, but the eminent domain law on municipal waterworks projects was enacted subsequent to the passage of that act. It is difficult to conclude, therefore, when the legislature passed Act 114 of 1957, authorizing regional water districts and stating that they should have the power of eminent domain to be exercise in the manner "now provided by law," that it had in mind A.C.A. §18-15-401 et seq., which had at that time not been enacted. Cf.,Board of Directors of St. Francis Levee District v. Redditt,79 Ark. 154 (1906) (concluding, where a levee district was to proceed "as provided by law . . . in similar cases" in its exercise of eminent domain, that the applicable subchapter was the only similar one on the books at the time of the creation of the district).
The subchapter mentioned in your second question (A.C.A. §§18-15-601 et seq.), is the codification of a much older law, originally passed in 1895. See Acts 1895, No. 126. It set out the relevant procedures for the exercise of eminent domain for "all municipal corporations in this state, and all corporations organized for the purpose of supplying any town, city, or village in this state, or the inhabitants thereof with water. . . ." The subchapter was amended in 1995 to add language including "not-for-profit corporations," "water associations," and "rural . . . consumers." This subchapter sets out several provisions governing the appropriate eminent domain procedures and then makes reference to the provisions of a separate subchapter, A.C.A. §§18-15-1201 to -1207 (governing procedures to be used by railroad, telegraph and telephone companies), for the balance of the procedures.[2]
A nonprofit regional water distribution district is not, strictly speaking, a "municipality," for purposes of either A.C.A. §§18-15-401 or -601, but it does appear to have corporate form (see, e.g., A.C.A. § 14-116-402(1) (authorizing such regional districts to sue and be sued in its "corporate" name)),[3] and it appears to be organized for the purposes noted in A.C.A. §18-15-601. It may thus reasonably be concluded that such regional water districts are "corporations organized for the purpose of supplying . . . water" and thus come within the provisions of A.C.A. §§ 18-15-601 to -607. It is my opinion, therefore, that this subchapter is the most appropriate to apply to public nonprofit regional water distribution districts. In my opinion an answer to your third question is thus unnecessary. It appears, in response to your fourth question, that A.C.A. § 18-15-601 et seq., including 18-15-604, is the appropriate provision.
Again, however, the language of A.C.A. § 14-116-402(10) is ambiguous on this point. It has been stated that in the absence of a special constitutional provision prescribing how compensation shall be ascertained in proceedings to condemn land, there is no limitation on the legislature and the legislature may provide such a mode as it sees fit, provided only that the tribunal is an impartial one, and that the parties interested have an opportunity to be heard. Road Improvement District No. 6 v. Hall, 140 Ark. 241,215 S.W.2d 262 (1919).
In light of the ambiguous language of A.C.A. § 14-116-402(10) on the point of the precise procedure to be employed by Tri-County in the condemnation of land, and in the absence of legislative clarification on the point, in my opinion a court would be unwilling to overturn a previous condemnation proceeding accomplished under a subchapter other than A.C.A. § 18-15-601 etseq., so long as constitutional safeguards are met.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] One other subchapter of potential applicability, which is not mentioned in your request or the correspondence attached thereto, is A.C.A. § 18-15-1101 to -1107 which grants the power of eminent domain to "all corporations organized in this state for the purpose of furnishing water to the public for irrigation of any lands or crops. . . ." It was held in Lyon v. WhiteRiver-Grand Prairie Irrigation District, 281 Ark. 286,664 S.W.2d 441 (1984) that the 1957 legislation authorizing the creation of nonprofit regional water distribution districts also contemplated their use for irrigation purposes. See also Looney, Enhancing theRole of Water Districts in Groundwater Management and SurfaceWater Utilization in Arkansas, 48 Ark. L. Rev. 643, 650 (1995). This subchapter, however, makes reference to A.C.A. § 18-15-1201
to -1207 for the applicable procedures, as does the second subchapter about which you have inquired, (A.C.A. § 18-15-601 etseq.).
[2] That subchapter (A.C.A. § 18-15-1201 et seq.), it is noted in correspondence enclosed with your request, contains procedures for condemnation entirely different from those contained in A.C.A. §§ 18-15-401 et seq. Subchapter 12, as originally enacted, applied only to condemnation by private entities, which are subject to more stringent constitutional requirements. See
Arkansas Constitution, art. 12, § 9, and McMahan v. CarrollCounty, 238 Ark. 812, 384 S.W.2d 488 (1964). The legislature has apparently bootstrapped the provisions of A.C.A. §§ 18-15-1201 etseq., however, to the condemnation activities of various public
entities whether constitutionally compelled or not. See, e.g., A.C.A. §§ 18-15-605(a) and 18-15-1103.
[3] The subchapter authorizing the creation of nonprofit regional water distribution districts is not plain on the question of whether such districts are "corporations." Certainly, they are not private corporations. But it has been held, in a similar context, that improvement districts are by their nature "corporations" whether expressly denominated as such by the applicable statute. See, e.g., Whipple v. Tuxworth, 81 Ark. 391,99 S.W. 86 (1907). In my opinion regional water districts are more nearly "corporations" for purposes of A.C.A. § 18-15-601 etseq., than they are "municipalities," for purposes of A.C.A. §18-15-401 et seq. Such districts fall even more appropriately under the new language added to A.C.A. § 18-15-601 embracing "not-for-profit corporations" and "water associations."