WATTS *v.* COMMERCIAL PRINTING COMPANY.

Opinion delivered June 11, 1928.

526

*A. J. Johnson* and *Bruce H. Shaw,* for appellant.

*E. W. Brockman, U. J. Cone* and *Jones & Hooker,* for appellee.

SMITH, J. Appellant brought suit to recover damages on account of an alleged libelous article published in the Pine Bluff Commercial, a daily newspaper, by the members of the budget committee of the community chest, in the city of Pine Bluff. The article in question was an advertisement, wherein the community chest reported to the public its activities for the preceding year, and made a statement of the funds which would be required for the ensuing year. The community chest is a fund contributed by the people of a city and community who are interested in the charities and benevolences of the city, and whose contributions go into a common fund, which is distributed to the charitable and benevolent organizations in the proportion previously agreed upon. Representatives of these organizations submit a statement of the estimated operating expenses for the ensuing year to the budget committee of the community chest, and, when it has been determined what the total requirements of all the organizations will be, an organized and concerted campaign is conducted, whereby funds are raised at one time for all the local charities and benevolent organizations, in which friends and supporters of all the organizations cooperate. If the campaign for funds is completely successful, each organization is given the sum allotted to it by the budget committee; but, if not entirely successful, each organization is given its proportionate part. It was contemplated that contributions should be made once for all, that is, the contribution would represent the total amount which the contributor was willing to give to all the charitable and benevolent organizations, and the organizations provided

for would not thereafter take separate or additional public collections.

In the fall of 1925 a campaign was put on in the city of Pine Bluff for the budget of 1925-1926, and among the organizations included in the budget was one known as the American Savings Aid, to which an allotment of $3,000 per year was made. The community campaign did not realize the amount of money required by all the organizations, and it became necessary to reduce the allowance of each, and, as a result of this necessity, the savings aid was paid only $205 per month, instead of the $250 which would have been paid had the amount of the budget been fully subscribed.

Appellant, R. D. Watts, is the chief executive officer of the American Savings Aid, and, when he was advised that the organization which he represented would be allowed only $205 per month out of the community chest, he declined to receive anything further from the community chest, and solicited contributions to his organization, as had been done before the community chest was instituted.

When the campaign for the 1927 funds was put on, the budget committee of the community chest published a full-page advertisement in the Pine Bluff Commercial, wherein there was given a report of the disbursement of the funds raised during the preceding year, showing what money had been paid to each of the organizations for whose benefit the funds had been raised. On this page there appeared in large type, surrounded by heavy black lines, the following statement:

"As to the American Savings Aid.

"Previous to our 1926 campaign, the directors of the American Savings Aid submitted a budget to the community chest budget committee for $3,000 to cover their 1926 expenditures. After the first monthly installment was given Captain Watts, the American Savings Aid withdrew from the community chest of their own volition, claiming that the budget was insufficient to carry on their work. On investigation we found that $100 of this was being paid monthly on a home that was and is now in

the name of Captain Watts. Captain Watts also failed to comply with any agreements made with us, and he continued to collect money from his old subscribers, and also continued his tambourine and house-to-house collections. Captain Watts also failed to make any accounting for any money spent.

"The community chest board believes that Captain Watts should be paid a salary, as every other organization secretary is paid, instead of working under the indefinite term of living expenses, which does not mean any definite amount of money."

Following the publication of this statement, this suit was brought against the persons whose names were signed thereto as the authors thereof, and the publishers of the newspaper.

In the answer filed by the defendants, any intention to reflect upon the plaintiff was disclaimed, and the truth of the statements contained in the advertisement was pleaded as a defense to the action.

Appellant, plaintiff below, offered testimony tending to establish the facts above recited, which we must assume would have been found by the jury to be true, as the court directed a verdict against appellant at the conclusion of his testimony. Appellant also offered testimony to the effect that the article was false, in that he had not used any money in the payment of the purchase price of a home the title to which was in himself, and that he had not violated any agreements with the budget committee of the community chest, and that he had properly accounted for all money received for the use of his society, and that he had not improperly appropriated any of its funds to his own use.

In directing a verdict against appellant, the court charged the jury as follows:

"Gentlemen of the jury, under the view that the court takes of the law of this case, you are instructed by the court to return a verdict for the defendants. Your verdict will be, 'We, the jury, find for the defendants.' The court wants to make this explanation so you won't go

home wondering why. The complaint in this case charges that the American Savings Aid is a corporation. That it, as a corporation, purchased certain property in the city of Pine Bluff which is used by it as a home. Not as a private home by Captain Watts, but as a building—he lives in it all right—but as a building that is used by the American Savings Aid to carry on its purpose of attempting to help people out who are in trouble for various causes; and then the complaint alleges, that is, at least that part of it which the court would otherwise hold is libelous *per se,* that is, words libelous in themselves, you wouldn't have to make any proof of damages as to those kind of words; all you have got to show is that they were printed. Those words in this particular case are set out as being that, 'after this money was turned over to Captain Watts, he withdrew voluntarily from the Pine Bluff Community Chest, and upon investigation we found out that a hundred dollars a month of it was paid on a home which was and is now in his name.' Now the proof in this case, because the plaintiff introduced what purported to be his articles of incorporation, that the American Savings Aid was not incorporated, for the reason that for some reason or other the court never did make an order incorporating the American Savings Aid. Somebody somewhere along the line fell down on that. The record shows that the clerk merely spread upon the records of the circuit court only the petition for incorporation, the articles of association, and that is all. There is nothing in the record showing that the petition was ever granted by the court, and that is necessary. The clerk of the court cannot incorporate anything. The petition has to be addressed to the court for the attention of the court, and the judge of the court cannot incorporate anything either; that is not the act of the judge; it is the act of the court, and in this instance the record clearly shows that the American Savings Aid was never legally incorporated.

"Therefore it is left in this shape: the property, so the court thinks, at least, is legally in those persons who

attempted to incorporate the American Savings Aid. That is R. D. Watts, his wife, and J. M. Shaw. So, when you get down to the bottom of it, the proof on the part of the plaintiff shows that the property is in the name of R. D. Watts legally, not solely in his name, but so much so that the court thinks there cannot be any libel in the statement published.

"Now, gentlemen, the court directs you to return this verdict: 'We, the jury, find for the defendants.' It doesn't make any difference which one of you sign the verdict; just any of you sign it."

As appears from the statement of the court in directing a verdict for the defendants, an attempt was made, pursuant to chapter 38, paragraph 7 thereof, §§ 1788 *et seq.* C. & M. Digest, to incorporate the American Savings Aid as a benevolent association, and a petition addressed to the circuit court was filed with the clerk thereof, praying that a certificate of incorporation be issued. Accompanying this petition were the articles of association, or constitution, which contained the names of the persons "desirous of becoming incorporated under the provisions of this act," and a statement of the purposes of the society, which were recited to be as follows: "The object and purpose of this association is for the dispensation of aid and assistance to the needy and unfortunate, to house, clothe and nurture them; to provide and care for the widows and orphans in need, and to procure suitable employment for men and women in need of work; to propagate the Christian religion, and engage in rescue and relief work among girls and women who have been abandoned by society, and assist them to reform into useful Christian women, and to that end they may do any and all things reasonable and consistent therewith."

The constitution or articles of association further provided that: "The American Savings Aid shall have an advisory board, composed of five citizens of Pine Bluff, the first two of whom shall be chosen by the incorporators, and the remainder by themselves, and which board

shall also be known as a board of publicity, and who shall formulate a set of by-laws for the government of the American Savings Aid, not inconsistent with the purposes and intent of the corporation.''

The articles provided for the election or appointment of a commander-in-chief, who became the executive officer of the society, whose tenure of office should be during good behavior, but who might be removed by the incorporators or their successors for cause, and his successor appointed by them, with the advice and consent of the advisory-publicity board.

The constitution or articles of association also provided that: ''The American Savings Aid shall adopt and use a seal, crests, and uniform; and no property shall be bought or sold by the American Savings Aid, except with the advice and majority consent of the advisory-publicity board; and the signature of the commander-in-chief, under the seal of the association, shall be sufficient to pass title, or receipt for money and property. The regular meetings of the advisory-publicity board shall be not less than twice a year, six months apart, but special meetings may be held at any such time as the commander-in-chief and two members of the advisory-publicity board may deem necessary, upon four hours' notice to the other members of the advisory-publicity board.''

Upon filing the above petition and the constitution or articles of association with the clerk of the circuit court, that officer, without calling the attention of the circuit court to the petition for action, and without any action on the part of the court having been taken, proceeded to enter of record, under § 1790, C. & M. Digest, the ''said constitution or articles of association and accompanying petition,'' and issued a certificate showing that he had done so.

The incorporators, assuming that they had complied with the law and had become a benevolent association, under the sections of the statute referred to, proceeded to function as such, and, pursuant to the constitution or articles of association, elected or appointed appellant

Watts as commander-in-chief, and selected a publicity board of five members. Under the supposed authority of the constitution, the publicity board and its commander-in-chief proceeded to raise funds by public contributions to carry out the purposes of the association. In furtherance of this purpose the association contracted to purchase a home in the city of Pine Bluff, for which it agreed to pay the sum of $4,500, of which $1,000 was paid in cash, the balance to be paid within four years, and in discharge of this obligation payments of $100 per month were made to the association's grantor. A deed to the home was made to the American Savings Aid and its successors and assigns, and this deed was duly recorded.

The court below was correct in holding that the statute had not been sufficiently complied with to make the association a corporation *de jure,* the statute giving the clerk of the circuit court no authority to incorporate the petitioners as a benevolent association. The approval of the circuit court was required, and this was not obtained.

The court was in error, however, in holding that appellant was the owner of the property purchased in the name of the American Savings Aid because of the failure to comply with the law in the matter of its incorporation. There was an attempt to incorporate, and representations were made to the public that there was a corporation, on the faith of which solicitations were made to and contributions were received from the public, with portions of which payments were made on the purchase price of the home used by the association for its professed corporate purposes.

Under plainest principles of equity, appellant Watts and his associates would have been estopped to question the corporate existence of the American Savings Aid as a benevolent association or to assert title to the property in themselves individually.

It may be true that appellant, as commander-in-chief of the association, had the authority, under the seal of the association, to convey title to its property, but, if

so, this could not be done "except with the advice and majority consent of the advisory-publicity board."

In the case of *Whipple* v. *Tuxworth*, 81 Ark. 391, 99 S. W. 86, Mr. Justice BATTLE discussed the difference between corporations *de jure* and *de facto*, and, after stating that a substantial compliance with the statute in regard to incorporating was sufficient to create a corporation *de jure*, he proceeded to say: "The requisites to constitute a corporation *de facto* are three: (1) a charter or general law under which such a corporation as it purports to be might lawfully be organized; (2) an attempt to organize thereunder; and (3) actual user of the corporate franchise."

These essentials are all present here. There is a statute under which such a corporation as the American Savings Aid purports to be might have been organized; there was an attempt to organize thereunder, and there has been an actual user of the supposed corporate franchise.

The American Savings Aid is such a corporation *de facto* as might be alleged, in an indictment, to be the owner of property which one was charged with having stolen from it. The crime of larceny or embezzlement could be committed by taking its property with a felonious intent, although it was only a *de facto* corporation. *Meadors* v. *State*, 171 Ark. 705, 285 S. W. 380; *Pearrow* v. *State*, 146 Ark. 182, 225 S. W. 311.

The humiliating and degrading effect of a libelous accusation would be as great in the case of a *de facto* corporation as in the case of one *de jure*, the essence of the action for libel in either case being the charge that one had wrongfully converted funds contributed to a charity. We conclude therefore that the court was in error in directing a verdict in defendant's favor.

Moreover, the charge that appellant had misapplied funds of the American Savings Aid to his private use is not the only charge declared upon. There are other charges declared upon by appellant in his complaint which a jury might find to be libelous, and which, accord-

ing to appellant's testimony, were shown to be false, these being that appellant had failed to comply with his agreements or account for money spent. *Skaggs* v. *Johnson,* 105 Ark. 254, 150 S. W. 1036; *Murray* v. *Galbraith,* 95 Ark. 199, 128 S. W. 1047.

The judgment of the court below must therefore be reversed, and it is so ordered.