WYE COMMUNITY CLUB, INC. *v.* Lampkin Ross HARMON, and Glenda Locke, et al. d/b/a Wye Community Club

CA 88-307                                    764 S.W.2d 55

Court of Appeals of Arkansas
Division II
Opinion delivered January 25, 1989

248

*Patten & Brown*, for appellant.

*G. Randolph Satterfield*, for appellee.

DONALD L. CORBIN, Chief Judge. This appeal comes to us from Perry County Chancery Court, First Division. Appellant, Wye Community Club, Inc., appeals from the trial court's denial of its petition to quite title. We affirm.

This suit was initiated by appellant in February of 1987 as an action to quiet title to approximately two acres of land in Perry County. The relevant facts follow. In 1944, Wye Community Club (appellee) was incorporated as a nonprofit corporation under the law existing at that time. The 1944 corporation met in regular sessions, transacted business, elected officers and directors annually, and functioned as a corporation from its inception until after the institution of this proceeding.

Apparently, sometime in 1986, it was discovered that the 1944 corporation had not filed its Articles of Incorporation with the Secretary of State's office in response to legislation enacted in 1963 and amended in 1973. Without consultation or notice to the existing members of the club, Wye Community Club, Inc. (appellant), with a record of two named incorporators and nine members of the 1944 club, was incorporated as a nonprofit corporation on October 30, 1986. The record reveals that the by-laws of the 1986 corporation differed substantively from the by-laws of the 1944 corporation, specifically regarding the fact that those responsible for incorporating would serve as officers of the

new corporation, that no other members could serve as an officer until they had been a member of the new club for two years, and requiring members to be a resident and landowner within a three-mile radius. On November 10, 1986, and September 26, 1987, quitclaim deeds were executed to the new corporation for the tract of land in question, on which the community club building sits. The deeds were executed by several individuals who were the directors of the 1944 corporation on January 31, 1975, rather than the directors of the 1944 corporation as of the time the deeds were executed. Both the 1944 corporation and the 1986 corporation claimed title to the subject property. The 1986 corporation petitioned the court to quiet title in itself.[1] After trial of the matter, the chancellor denied the petition and vested title to the land in the 1944 corporation. The trial court specifically found that appellant failed to meet its burden of proof; that appellee continued in existence as a de facto corporation after passage of the 1963 and 1973 legislative acts; and that the deeds executed in 1986 and 1987 by the 1975 directors had no legal effect. From the judgment and decree comes this appeal.

For reversal, appellant raises five arguments:

I.

THE COURT ERRED IN DECLARING THAT AP-PELLANT FAILED TO MEET THE BURDEN OF PROOF.

II.

THE LOWER COURT ERRED IN DECLARING WYE COMMUNITY CLUB A DE FACTO CORPO-RATION AFTER JANUARY 31, 1975, BECAUSE:

(a) IT DOES NOT MEET ARKANSAS CASE LAW DEFINITION OF A DE FACTO COR-PORATION.

---

[1] A third claim to the subject property was also made by Lampkin Ross Harmon. Mr. Harmon's claim was denied by the court and he is not a party to this appeal.

(b) THE STATE TERMINATED ITS EXIS-
TENCE.

### III.

THE LOWER COURT ERRED IN DECLARING
THE DEED TO APPELLANT TO BE A NULLITY
AND VOID.

### IV.

THE LOWER COURT ERRED IN VESTING AND
QUIETING TITLE IN WYE COMMUNITY CLUB, A
DE FACTO OR UNINCORPORATED ASSOCIA-
TION.

### V.

THE COURT ERRED IN FINDING THAT APPEL-
LANT FAILED TO ALLEGE AND PROVE COLOR
OF TITLE, PAYMENT OF TAXES FOR SEVEN
YEARS AND/OR ADVERSE POSSESSION OF THE
PROPERTY.

Because appellant's second, third and forth points involve a central issue, the remaining arguments will be discussed first.

In its first point, appellant argues that the trial court erred in declaring that it failed to meet its burden of proof. However, this argument is unsupported by either convincing argument or authority. Where an assignment of error is unsupported by either convincing argument or citation of legal authority, the appellate court does not consider it on appeal unless it is apparent without further research that it is well taken. *Anderson v. Anderson*, 18 Ark. App. 284, 715 S.W.2d 218 (1986). Appellant, in its brief, merely lists ten facts that it alleges are undisputed, but admits that the legal effect of the facts are controverted. Appellant neither explains the controversion nor enunciates its position with regard thereto. Chancery cases are reviewed *de novo* on appeal and the chancellor's findings of fact will not be reversed unless they are clearly erroneous or clearly against the preponderance of the evidence. *Kunz v. Jarnigan*, 25 Ark. App. 221, 756 S.W.2d 913 (1988). The burden is upon the

appellant to show that the findings are erroneous, and because appellant has made no argument to that effect, we do not address its first point.

Appellant's fifth point for reversal asserts that the court erred in finding that appellant failed to allege and prove color of title, payment of taxes for seven years or adverse possession of the property. We disagree.

A quiet title action is an action by one in possession. *Carter* v. *Phillips*, 291 Ark. 94, 722 S.W.2d 590 (1987). If a person takes possession of land and holds the same under claim of ownership continuously, openly, adversely, for more than seven years, such person acquires title by adverse possession and will prevail in an action to quiet title. *Gibbs* v. *Bates*, 215 Ark. 646, 222 S.W.2d 805 (1949). Appellant alleges that it and its predecessors in title have been in possession of the described property, openly, notoriously, adversely and exclusively, for more than seven years and no one has claimed or occupied said premises adversely to it and its predecessors. The court specifically found that appellant had no legal existence until October 30, 1986, at which time it was granted its corporate charter and, therefore, could not possibly have had possession of the property for a period of more than seven years. Findings of fact of a chancellor will not be reversed on appeal unless clearly erroneous. *Cuzick* v. *Lesly*, 16 Ark. App. 237, 700 S.W.2d 63 (1985).

Prior to the discovery made in 1986, that the 1944 corporation failed to file its corporate charter with the Secretary of State, all of the members of the 1944 corporation possessed the property, none claiming any ownership adverse to any other, with the exception of Mr. Harmon who is not a party to this appeal. In order to prove adverse possession, the possession must have been adverse for more than seven years. Possession was not claimed adversely until after the 1986 discovery. Therefore, we cannot say the chancellor was clearly erroneous in finding that appellant failed to prove adverse possession.

Appellant's remaining three points all require resolution of the effect of certain legislation, enacted in 1963 and amended in 1973, and will therefore be discussed together. We also note at this point that this case was originally appealed to the Arkansas Supreme Court. The supreme court declined to review the case

and transferred it to this court. We, therefore, assume jurisdiction pursuant to Rule 29(3) of the Rules of the Supreme Court and Court of Appeals.

Appellant essentially challenges the chancellor's findings that appellee existed as a de facto corporation subsequent to January 31, 1975, retaining the ability to hold title to land in the corporate name. Appellant's argument centers around the "Arkansas Nonprofit Corporation Act" enacted March 7, 1963, and amended in 1973, codified at Arkansas Code Annotated Sections 4-28-201 to -223 (1987 and Supp. 1987). The 1963 Act generally provides for the incorporation and registration of nonprofit organizations, and repeals Act 51 of 1875, the prior law for formation of nonprofit corporations. The Act, among other things, requires any association of person desirous of becoming incorporated under the Act to file its articles of incorporation, which have been court approved, with the Secretary of State and pay the requisite filing fee. Ark. Code Ann. § 4-28-206 (1987). Section 22 of Act 176 of 1963 stated "The provisions of this Act shall in no way affect any nonprofit corporation chartered under the laws of this state existing prior to the effective date hereof whose primary purpose, as stated in its charter, is for the education of its members." Section 1 of Act 42 of 1973 amended Section 22 of Act 176 of 1963, which is now codified at Arkansas Code Annotated Section 4-28-204 (1987), to read as follows:

> The provisions of this Act shall in no way affect any nonprofit corporation chartered under and in accordance with the laws of this State existing prior to [March 7, 1963]. Any such non-profit corporation organized prior to [March 7, 1963] and which has not filed a copy of the order or action whereby they were granted corporate status under the then existing law may file a certified copy of such order or action from the Clerk of the Court wherein such authority was granted, together with a filing fee of $10.00, with the Secretary of State of Arkansas and such filing shall evidence the incorporation and shall entitle such organization to recognition of its legal status, the same as one formed under the provisions of this Act.

Section 2 of Act 42 of 1973 further provided that "any non-profit corporation organized prior to [March 7, 1963] and wishing to

take advantage of the provisions of Section 22 of [the 1963] Act, as amended by this Act, shall make the filing provided for herein within *two* (2) *years* after the effective date of this Act [January 31, 1973]." Section 2 was never codified and appeared only as a note to Arkansas Statute Annotated Section 64-1921 (Repl. 1980). It does not appear in any form in the Arkansas Code Annotated.

It is undisputed that appellee did not file its order granting corporate status with the Secretary of State prior to January 31, 1975. Appellant argues that appellee's failure to file within that two year period terminated the existence of the 1944 corporation. We disagree.

The plain language of the Act specifically states that it in no way affects corporations existing prior to passage of the Act. Further, the Act as amended and codified provides only that a preexisting corporation *may* file a copy of the order granting corporate status with the Secretary of State. By usual statutory construction "may" is directory or permissive rather than mandatory. *Gregory* v. *Colvin*, 235 Ark. 1007, 363 S.W.2d 539 (1963). *See also, Richards* v. *State*, 266 Ark. 733, 585 S.W.2d 375 (Ct. App. 1979). Although the filing is not mandatory, if a corporation chooses to file, the filing merely enhances the legal status of the corporation by offering prima facie evidence of incorporation. This is apparent from the wording "shall *evidence* the incorporation" when read in light of the emergency clause which recites that the Act is necessary to *clarify* the status of nonprofit corporations formed prior to the 1963 Act.

Although Section 2 of the 1973 amendment used the mandatory wording "shall" when providing for the two year filing period, it did so only in reference to preexisting corporations "wishing to take advantage of" the Section 22 provisions. By implication, this also means that those not wishing to take advantage of those provisions are not required to file.

Furthermore, although not directly relevant to this appeal, we note that a similar act was passed in 1987. It again provides that "any nonprofit corporation organized prior to the effective date of Act 176 of 1963 which wishes to exist and function under the provisions of that Act shall within one (1) year . . . file with the Secretary of State a copy of the court order or action whereby

it was granted corporation status . . . ." Obviously had the legislature intended termination of corporations that failed to file within two years of the 1973 amendment, there would be no corporations in existence to which Act 406 of 1987 could apply since it applies only to pre-1963 corporations which had not yet filed with the Secretary of State.

We now reach appellant's specific points for reversal. Appellant alleges in its second point that the trial court erred in finding that the 1944 club was a de facto corporation after January 31, 1975. Appellant offers two arguments in this regard.

First, appellant asserts that the 1944 club does not meet the common law definition of a de facto corporation because there was no attempt to comply with the 1963 Act, as amended. The requirements necessary to constitute a de facto corporation were first enunciated by the supreme court in *Whipple* v. *Tuxworth*, 81 Ark. 391, 99 S.W. 86 (1907). To constitute a corporation de facto there must be a charter or general law under which such a corporation as it purports to be might lawfully be organized, an attempt to organize thereunder, and actual use of the corporate franchise. *Id.* Thus, appellant asserts that the second requirement is absent in the case at bar. We disagree. Because the 1963 Act, as amended, in no way affected pre-1963 corporations, it was not essential that appellee attempt to organize thereunder, especially in light of our conclusion that the filing requirement was permissive rather than mandatory. Therefore, appellant's argument that the common law requirements have not been met is unpersuasive.

Appellant also argues that a de facto corporation could not exist subsequent to January 31, 1975, because the existence of a nonprofit corporation created prior to the 1963 Act was limited by Section 2 of Act 42 of 1973. Appellant properly cites the rule that where statutes limit the existence of a corporation to a certain period there cannot be a corporation de facto after that limit. *Arlington Hotel Co.* v. *Rector*, 124 Ark. 90, 186 S.W. 622 (1916). However, as discussed above, the acts relied on by appellant do not limit the period of corporate existence.

In its third point, appellant argues that the chancellor erred in declaring the deed to it to be a nullity and void. Appellant's

position, however, is based upon the assumption that no corporation existed subsequent to January 31, 1975, and that the directors at that time had authority to wind-up corporate affairs, including disposition of the subject property.

As we have stated, the 1944 corporation's existence was not terminated in 1975. The corporation continued to exist and function in that capacity until after this action was initiated. The subject property was held by the 1944 corporation in the corporate name. Pursuant to its constitution and by-laws, the power to convey real property rested with the Board of Directors. The deed in question was executed in 1986 but was executed by 1975 directors who no longer held a position on the corporation's board at the time the deed was executed. Because the grantors were no longer directors of the corporation, they had no authority to convey property on behalf of the corporation.

Appellant alternatively argues that the 1975 directors' actions were ratified by the 1986 membership of the original corporation. However, upon our *de novo* review of the record, we find no evidence sufficient to support that contention.

Finally, appellant argues that the court erred in vesting title in the 1944 corporation. Based upon disposition of appellant's other points for reversal and the reasons cited therein, we cannot say that the chancellor was clearly erroneous in vesting title to the subject property in appellee.

Affirmed.

CRACRAFT and ROGERS, JJ., agree.