The Honorable Stephen D. Bright State Representative 49 Oak Forest Loop Maumelle, AR 72113-6816
Dear Representative Bright:
I am writing in response to your request for my opinion regarding various questions posed by a constituent who is dissatisfied with the actions of his purported neighborhood property owners association (the "POA"). Your constituent describes the general situation as follows:
 [O]ur neighborhood, known as River Run, is experiencing a very unfortunate situation where it appears that a very small minority group of people is attempting to run [the POA] without the authorization required by the rules of the organization. They also appear to be doing several other things improperly such as regularly and historically violating almost all significant by-laws, electing Board members without proper quorums, changing by-laws without due process, spending money outside physical boundaries set up by the developer, and accumulating large amounts of cash while not allowed by the Articles of Incorporation. In addition, there does not appear to be sufficient evidence that the neighborhood properly voted to set up a POA in the first place.
Against this backdrop, your constituent has posed the following questions:
 1. What does it take to properly form a POA? What are the legal implications if a POA was not properly set up? What are the legal implications if a proper number of residents did not approve the activation or setting up of a POA?
 2. If a POA has in fact been improperly run, what are the proper actions to correct the situation?
 3. Does Arkansas law allow a POA to exist or to be run without a majority approval by its residents? What is considered to be a valid majority or quorum under the law in order to elect a Board of Directors and conduct business? Can a Board of Directors collect dues, spend money, file liens, and otherwise run a POA as authorized representatives if a majority or a valid quorum was not present to elect them? What authority, if any, do such improperly elected Board members have? If less than a majority is allowed, what would prevent another minority group in the neighborhood from holding a general meeting and electing its own Board members? Are residents obligated to pay dues?
 4. Can a POA legally continue to operate, collect dues, and spend money if it has continuously and historically violated significant by-laws? How does this type of by-law noncompliance affect the POA and its ability to continue? Can a group of people represent themselves as the Board of Directors of a POA, collect dues, spend money, file liens on neighbors, and otherwise run a POA if they have not been properly elected in accordance with the by-laws? What authority, if any, would such improperly elected Board members have? Are residents obligated to pay dues if a POA is out of compliance?
 5. Can a group of people who claim to be the Board of Directors change the by-laws of a POA if they were not elected by a majority of residents or in accordance with the by-laws?
 6. Can a POA accumulate large sums of cash when the Articles of Incorporation does [sic] not appear to allow such activity? What is considered a reasonable amount under the law? What are the further implications if the Board of Directors are not properly elected?
 7. Can a POA spend money outside specific physical boundaries set up by the developer?
 8. Can the Board of a POA continue to violate its rules and by-laws after being notified by a resident that such activity is unacceptable? What is the effect of such a notification?
 9. What are the criminal and civil implications of the actions of those claiming to be Board members and officers and what recourse do the residents have against the POA and/or those claiming the be Board members in the situations described in the above questions? What remedies are available to the residents as to dues refunds, damages, etc.? What are considered reasonable amounts?
RESPONSE
I would be unable to answer your questions without reviewing the charter documents of the POA, which I presume is a private, nonprofit corporation. Questions regarding the scope of authority of the POA's board of directors can only be answered by recourse to these documents, as well as to certain generally applicable corporate law. I am further barred by statute from answering many of your questions, which relate a non-public dispute that should be addressed by private counsel.
Question 1: What does it take to properly form a POA? What are the legalimplications if a POA was not properly set up? What are the legalimplications if a proper number of residents did not approve theactivation or setting up of a POA?
The term "property owners association" is defined in the Code in only one location, which deals with the distribution of insurance premium tax moneys to aid in fire protection:
 As used in this section, "planned community property owners' association" means an incorporated nonprofit organization operating under recorded land agreements through which each lot owner in a planned unit or other described land area is automatically a member and each lot is automatically subject to a charge for a proportionate share of the expenses for the organization's activities, such as maintaining common properties, and which acts as the directing or governing body of a real estate development developed by a single developer, containing not less than five thousand (5,000) acres, which has been or is being developed under a comprehensive plan for a community containing streets and other public services, parks, and other recreational facilities for common use by the residents thereof; which has been subdivided into sufficient lots for residential use to accommodate a projected population of no fewer than one thousand (1,000) persons; which is not incorporated as a city or town; and for which a statement of record has been filed with the Secretary of Housing and Urban Development under the Interstate Land Sales Full Disclosure Act.
A.C.A. § 24-11-811(a). I do not know whether the POA fits within this definition, but I assume it is a nonprofit organization incorporated under either the Arkansas Nonprofit Corporation Act of 1963, A.C.A. §§4-28-201 through -206 and 4-28-209 through -224, the Arkansas Nonprofit Corporation Act of 1993, A.C.A. §§ 4-33-101 through -1532, or Act 51 of 1875.[1]
The formalities for forming a corporation are set forth in the various statutes. I cannot and will not opine whether the POA was properly formed in this case, since I am specifically prohibited from engaging in the private practice of law. A.C.A. § 25-16-701. The issues raised in this and your other questions are largely of a practical nature that should be addressed by private counsel. It may be that your constituent will eventually need to resort to the courts to resolve his complaints. However, I can and will discuss some generally applicable principles of law.
Assuming the corporation was not properly formed, the purported board of directors would lack the authority to exercise the powers afforded a corporation by statute. See, e.g., A.C.A. § 4-28-209. The only exception to this rule is when an organization qualifies as a "de facto" corporation. As the Arkansas Supreme Court noted in Watts v. CommercialPrinting Co., 177 Ark. 525, 533, 7 S.W.2d 24 (1928): "The requisites to constitute a corporation de facto are three: (1) a charter or general law under which such a corporation as it purports to be might lawfully be organized; (2) an attempt to organize thereunder; and (3) actual user [sic] of the corporate franchise." (Quoting Whipple v. Tuxworth,81 Ark. 391, 400, 99 S.W. 86 (1907)). Again, I cannot and may not opine whether the POA meets these criteria.
I am uncertain how to respond to your request regarding "the legal implications if a proper number of residents did not approve the activation or setting up of a POA." Assuming the POA is a "planned community property owners' association" as defined above, membership in the POA will presumably be a condition of the initial land sale reflected in the documents attending the sale. In theory, a group of residents might join to form a property owners association at some point subsequent to their purchase of property. However, as a simple matter of contract and corporate law, any decisions made by such a group could not be binding on neighboring property owners who elected not to participate.See Ark. Op. Att'y Gen. No. 92-093 (noting that "a POA normally has no public or governmental status" — a fact that confirms that the POA cannot dictate to non-members).
Question 2: If a POA has in fact been improperly run, what are the properactions to correct the situation?
As reflected in my response to your previous question, a POA is a private entity formed by the consent of its members. The standard remedies for corporate misconduct are consequently whatever the members have agreed will apply and whatever applicable corporate law, including the law of fiduciary obligations, dictates. I am not authorized to address such non-public matters and must consequently advise that your constituent seek private counsel. However, I will note that A.C.A. § 4-28-222
provides that this office or a prosecuting attorney may sue for the involuntary dissolution of nonprofit corporations in the event of specified misconduct.
Question 3: Does Arkansas law allow a POA to exist or to be run without amajority approval by its residents? What is considered to be a validmajority or quorum under the law in order to elect a Board of Directorsand conduct business? Can a Board of Directors collect dues, spendmoney, file liens, and otherwise run a POA as authorized representativesif a majority or a valid quorum was not present to elect them? Whatauthority, if any, do such improperly elected Board members have? If lessthan a majority is allowed, what would prevent another minority group inthe neighborhood from holding a general meeting and electing its ownBoard members? Are residents obligated to pay dues?
Again, the conditions that apply to the operations of a POA are normally determined by its members. The Arkansas Code contains various provisions regarding the election of directors, see, e.g., A.C.A. §§ 4-28-211 and -212, but the application of these provisions, as well as the determination of whether directors are acting ultra vires, should be addressed by private counsel acquainted with the parties' agreement. Similarly, I simply cannot address whether a dissident minority group might successfully elect "its own Board." Your constituent, in consultation with counsel, should review the corporation's charter documents in light of the above referenced law in order to determine the scope of minority rights. I will opine, however, that a resident who has not affirmatively committed in some fashion to pay dues cannot be charged with doing so. Not being a governmental entity, a POA lacks the power to impose what would amount to a tax on non-members.
Question 4: Can a POA legally continue to operate, collect dues, andspend money if it has continuously and historically violated significantby-laws? How does this type of by-law noncompliance affect the POA andits ability to continue? Can a group of people represent themselves asthe Board of Directors of a POA, collect dues, spend money, file liens onneighbors, and otherwise run a POA if they have not been properly electedin accordance with the by-laws? What authority, if any, would suchimproperly elected Board members have? Are residents obligated to paydues if a POA is out of compliance?
These questions, which clearly arise from specific purported acts of misconduct by an arguable POA, should be directed to private counsel. However, as a general proposition, notwithstanding possible misconduct by its directors, a corporation will continue in existence until it is dissolved in the manner authorized by statute. See, e.g., A.C.A. §4-33-1401 et seq. With respect to the issues of improper elections and dues obligations, see my responses to your previous questions. See also
Ark. Ops. Att'y Gen. Nos. 94-206 and 96-284 (characterizing dues obligations as a matter determined by contract).
Question 5: Can a group of people who claim to be the Board of Directorschange the by-laws of a POA if they were not elected by a majority ofresidents or in accordance with the by-laws?
The procedure for amending corporate bylaws should be prescribed in the corporation's charter documents, subject to certain possible statutory restrictions. See, e.g., A.C.A. § 4-33-1020 et seq. (setting forth conditions to be observed in amending bylaws). This question again appears to arise from a specific fact situation that should be addressed by private counsel. However, as a general proposition, I will note that a corporation, through its board, is obligated to observe the rules by which it is governed, including rules regarding the amendment of bylaws and the election of directors.
Question 6: Can a POA accumulate large sums of cash when the Articles ofIncorporation does [sic] not appear to allow such activity? What isconsidered a reasonable amount under the law? What are the furtherimplications if the Board of Directors are not properly elected?
The question of whether a POA's actions, including the accumulation of money, accord with its articles of incorporation is one of fact to be addressed by private counsel. The law contains no prescription as to what amount of reserve cash a POA might accumulate. I can only opine that a POA board of directors will normally be bound by fiduciary duties of prudence in the handling of POA funds. Your constituent should likewise consult private counsel to review his legal options should he wish to challenge the directors' election.
Question 7: Can a POA spend money outside specific physical boundariesset up by the developer?
As noted in A.C.A. § 24-11-811(a), a "planned community property owners' association" normally regulates activities within "a planned unit or other described land area." If the POA members have agreed to such a restriction, any expenditures outside the described area would appear to be improper. However, as noted above, the scope of actions a POA board is authorized to undertake is purely a matter of agreement among the POA's members, subject only to certain statutory restrictions and restrictions set forth in the land records. I am unable and unauthorized to opine whether any such expenditures would be impermissible with respect to the POA at issue in your request.
Question 8: Can the Board of a POA continue to violate its rulesand by-laws after being notified by a resident that such activityis unacceptable? What is the effect of such a notification?
As a general proposition, it is appears self-evident that a board of directors is not authorized to do what its corporate rules and bylaws expressly forbid it to do. Again speaking generally, if a board persists in impermissible conduct after a POA member has lodged a protest, I believe the board's fiduciary breach would be all the more blatant. However, I am obviously not in a position to opine that any board member in this instance breached his or her fiduciary duties.
Question 9: What are the criminal and civil implications of the actionsof those claiming to be Board members and officers and what recourse dothe residents have against the POA and/or those claiming the be Boardmembers in the situations described in the above questions? What remediesare available to the residents as to dues refunds, damages, etc.? Whatare considered reasonable amounts?
I am unauthorized to answer these questions, which essentially invite me to offer private legal advice.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] Although the 1963 Act repealed Act 51 of 1875, which provided for the incorporation of nonprofit organizations, it provided that corporations chartered under the old law would not lose their corporate status. Act 176 of 1963, § 22, codified at A.C.A. § 4-28-204(a). See WyeCommunity Club v. Harmon, 26 Ark. App. 247, 253, 764 S.W.2d 55 (1989).