The Honorable Reginald Murdock State Representative Post Office Box 1071 Marianna, Arkansas 72360-1071
Dear Representative Murdock:
You have asked for my opinion on a question posed by Ms. Shirley Harvell who asks whether the "Delta Regional Airport Authority (DRAA) of Colt, Arkansas meets all the requirements of A.C.A. §§ 14-362-103 through 14-362-105 (the Regional Airport Act) and especially A.C.A. § 25-20-104(c) (the Interlocal Cooperation Act)."
Ms. Harvell believes that the DRAA failed to meet those requirements between the years 2003 and mid-2011. Yet, she seems to concede that, as of late this year, the DRAA has properly incorporated itself. Nevertheless, she maintains, that the alleged eight years' worth of defective incorporation renders the DRAA "not in compliance with the laws of the State of Arkansas." Further, she infers from that alleged lack of compliance that the DRAA is not a "public corporation" and, therefore, cannot exercise any of the powers the legislature has given to regional airports. Specifically, she claims that the DRAA did not execute certain ordinances that the foregoing statutes require until, she says, "8 years after the establishment of the DRAA, after the allocation and expenditure of over $13 million of federal, state, and local taxpayer funds."
RESPONSE
I cannot definitively resolve this question because, to do so, I would have to resolve two sets of factual issues, which I am neither equipped nor authorized to do when issuing opinions. One set of factual issues revolves around whether the cities and counties that jointly formed the DRAA actually did follow the proper procedures for doing so. Nevertheless, as I explain below, even if one assumes for *Page 2 
the sake of argument, that the DRAA was not properly formed, that does not necessarily mean that the DRAA simply lacks a legal existence or lacks the authority granted by the legislature in A.C.A. § 14-362-105. One must determine whether, during that timeframe, the DRAA was a de facto corporation. As explained below, a de facto corporation is one that failed to properly incorporate itself but that is, nevertheless, treated as a corporation. The issue of whether the DRAA meets the criteria to be considered ade facto corporation is the other set of factual issues that I cannot resolve in this context.
DISCUSSION
The most concise way to address this question is to explain the distinctions between public and private corporations, on the one hand; and de facto versus de jure corporations, on the other.
When we consider corporations according to how they are owned or directed, we can divide them into public corporations or non-public corporations.[1] A "public corporation" is "a government-owned corporation that engages in activities that benefit the general public, usu. while remaining financially independent."[2] Any regional airport authority created pursuant to the Regional Airport Act (which is codified at A.C.A. §§ 14-362-101 to -132 (Repl. 1987 Supp. 2011)) is a "public corporation."[3]
When we consider corporations according to whether they were properly established or incorporated, we can divide them into de facto
corporations and de jure corporations.[4] A "de jure
corporation" is a "corporation formed in accordance *Page 3 
with all the applicable laws."[5] In contrast, a "de facto
corporation" is one that, for whatever reason(s), failed to properly incorporate. De facto corporations are, however, still considered corporations. In order for a defectively formed group to be considered a "de facto public corporation," the following criteria, which are individually necessary and jointly sufficient, must be met: (1) there must be a general law under which that group might lawfully have been organized; (2) the group must have attempted to comply in good faith with that general law; and (3) the group must have attempted to act as a corporation.[6]
This distinction between de jure and de facto
public corporations gives rise to two factual questions. First, between 2003 and mid-2011, was the DRAA a de jure corporation? In short, did the DRAA do everything needed to properly incorporate itself? If so, then the requestor's concerns are unfounded. To answer this factual question, a proper fact finder would have to take evidence and argument related to *Page 4 
the actions of the counties and cities that jointly tried to establish the DRAA. As noted above, I cannot address this factual question because I am not a fact finder when issuing Opinions.[7]
If the answer to that first question is "no," then a second factual question arises: Is the DRAA a de facto corporation? As we saw above, this question is actually a composite of three distinct factual questions. Of the three elements listed above, (1) is clearly met because the Regional Airport Act is the statutory scheme that the DRAA could have availed itself of to create a proper public corporation. Whether elements (2) and (3) are met is a question that requires testimony and fact finding — which, again, I am unable to undertake in an Opinion.
In summary, the requestor seems to think that if there are any deficiencies in the DRAA's incorporation, then that automatically renders the DRAA — and, she seems to imply, all its actions — void. But, as explained, even assuming that the DRAA was defectively formed, one must still determine whether the DRAA was ade facto corporation during the years the requestor alleges that the DRAA was not properly formed. Finally, I cannot make the factual determinations about (1) whether during 2003 to mid-2011, the DRAA was a de jure corporation, and (2) if not, whether during 2003 to mid-2011, the DRAA was a de facto corporation.
Assistant Attorney General Ryan Owsley prepared this opinion, which I hereby approve.
Sincerely,
DUSTIN MCDANIEL Attorney General *Page 5 
DM/RO:cyh
[1] "Non-public corporations" can be further divided into those that are "private corporations" and those that are "quasi-public." The former is defined as "a corporation founded by and composed of private individuals principally for a nonpublic purpose, such as manufacturing, banking, and railroad corporations." Black's Law Dictionary
(Bryan A. Garner, ed., 9th ed., West 2009), p. 393. The latter is defined as a "for-profit corporation providing an essential public service." Id.
[2] Black's Law Dictionary at 393.
[3] This is evident from A.C.A. § 14-362-104(a): "Any [regional airport] authority when created, and the members thereof, shall constitute a public corporation. . . ."
[4] While the Arkansas Supreme Court has recognized the distinction between de facto and de jure private
corporations — as it did, for example, in Watts v. Commercial PrintingCo., 177 Ark. 525, 533, 7 S.W.2d 24, 28 (1928) — the court has not yet had occasion to address whether this distinction applies topublic corporations. When the court does have occasion to do so, however, I believe the court will follow the great weight of authority on this point: every published case that I have found from a state supreme court that considered whether the de facto/de jure
distinction also applies to public corporations has answered affirmatively. Many, though not all, of those courts have considered whether the distinction applies to a paradigmatic, though not the only, kind of public corporation: a municipal corporation. Several cases from sixteen states that recognize de facto/de jure distinction as applied to municipal corporations are collected by Eugene McQuillin,The Law of MunicipalCorporations, §§ 3:103 to 3:104 (3d ed., West 2011). For a small sampling, please see these cases, some dealing with municipal corporations and some dealing with other kinds of public corporations, recognizing the de facto/de jure distinction: Missouri:Cherry v. City of Hayti Heights, 563 S.W.2d 72, 85 (Mo. 1978),City of Lake Saint Louis v. City of O'Fallon,324 S.W.3d 756 (Mo. 2010); Oklahoma: City of Bethany v. Mason,210 P.2d 353, 357 (Okl. 1949), State ex rel. Bd. of Regents forOklahoma Agr. and Mechanical Colleges v. McCloskey Bros., Inc.,227 P.3d 133 (Okl. 2009); Rhode Island: Fox v. Personnel Appeal Bd.of City of Cranston, 209 A.2d 447, 449 (R.I. 1965); Idaho:Clemens v. Pinehurst Water Dist., 339 P.2d 665, 669-71 (Idaho 1959);Minnesota: Bowman v. City of Moorhead,36 N.W.2d 7, 8-10 (Minn. 1949); Tennessee: Jordan v. KnoxCounty, 213 S.W.3d 751, 774-78 (Tenn. 2007); Montana: ChoteauLibrary Bd. of Trustees v. Teton County Bd. of Comm'rs,938 P.2d 1357 (Mont. 1997).
[5] Black's Law Dictionary at 392.
[6] See generally McQuillin, § 3:104 (collecting cases). While the latter enumerates the test as having four elements, most courts — including Arkansas, in reference to private corporations — say there are three criteria. See, e.g., Watts,177 Ark. at 533, 7 S.W.2d at 28; Jordan v. Knox County,213 S.W.3d 751, 776 (Tenn. 2007). But this difference in enumeration is not a difference in content because the same test is simply numbered differently.
[7] Section 14-362-103 explains what the governmental entities must jointly do if they are to properly form the regional airport. The requestor seems to think that subsection 14-362-103(c) requires these governmental entities to develop a full-blown Interlocal Cooperation Agreement (ICA), the provisions of which are governed by A.C.A. § 25-20-104. But that is not correct. The former statute only requires that the agreement between/among the parties include "the information provided for in" one subsection of the latter; namely subsection 25-20-104(c). This means that, while the agreement must specify things like its duration and purpose, the parties need not do other things that are normally required of an ICA, such as, among other things, seek this office's approval of the agreement's form and of its compatibility with state law (see subsection 25-20-104(f)).

 *Page 1